UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. 3:16-cr-26-TMR |
| **Plaintiff,** | : | **SENTENCING MEMORANDUM** |
| vs. | : | |
| **ROBERT S. JONES,** | : | |
| **Defendant.** | : | |

-----------------------------------------------

The only sentence that meets the goals of sentencing as set forth in 18 U.S.C. § 3553(a) is a life sentence. The United States accordingly concurs with the recommendation of the U.S. Probation Office.

The U.S. Probation Office determined that the defendant's Total Offense Level is 43, and that his criminal history category is V, and there have been no objections to the calculations from either party. In determining the Total Offense Level, the U.S. Probation Office included in its calculations an adjustment under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility and timely notification, respectively. That, however, was prior to the defendant's now *two* motions to withdraw his guilty pleas.

The defendant should no longer receive either adjustment. In light of his repeated attempts to withdraw his guilty pleas, he no longer "clearly demonstrates acceptance of responsibility for his offenses," the fundamental prerequisite for

1

receiving the adjustment set forth in U.S.S.G. § 3E1.1(a). Because he does not qualify under § 3E1.1(a), he cannot qualify for the additional adjustment under § 3E1.1(b). *See* U.S.S.G § 3E1.1(b) ("*If* the defendant qualifies for a decrease under subsection (a), ...") (emphasis added).[1] In the end, however, whether the defendant receives the adjustment is academic. The reason is that the defendant's Combined Adjusted Offense Level is so high – 51 (*see* PSR at ¶ 179) – that the -3 adjustment makes no difference. The reason for that is the Sentencing Guidelines "max out" at 43. (*See* PSR at ¶ 183.) In other words, whether the defendant receives the adjustment (51-3=48) or not (51-0=51), the defendant "maxes out" at 43, and the custodial sentence advised by the Sentencing Guidelines is and remains life.

The offense conduct here is among the most horrific, abhorrent, and disturbing crimes a human being could commit against a child. The cold words inked on paper (specifically, the Statement of Facts attached to the Plea Agreement which describe the offense conduct) do not do it justice. By the time of final disposition, the Court will have seen the two videos involving the infant, as described in the first two paragraphs of the Statement of Facts (R. 84, Plea Agreement at PageID 1028), and the two additional videos involving the toddler, as described in the middle paragraph on page 3 of the Statement of Facts (*id.* at

---

[1] An additional requirement for the -1 adjustment for timely notification under U.S.S.G. § 3E1.1(b) is a motion from the government. (*See* U.S.S.G. § 3E1.1(b) ("...and upon motion of the government ...").) The United States' plea agreement with the defendant does not mandate such a motion (*see* R. 84, Plea Agreement at 1021-1031), and the government makes no such motion in this case.

PageID 1030).  It will have also seen examples of the sexually explicit photos the defendant procured of or from the teenage girls, as described elsewhere in the Statement of Facts.  And, it will have seen examples of the defendant's lewd, perverted, and manipulative communication (in the form of chat messages) with those teenagers. They will all speak for themselves.

Whatever of society's ills befell upon the defendant as an infant, nothing justifies unleashing him back upon society.  The defendant simply cannot function in society.  His past recidivism is too great, his conduct too damaging and dangerous, and his risk of reoffending too high.  Society, particularly its children, simply cannot absorb the potent risk posed by the defendant, now or in the future.

It is not often that a discretionary life sentence presents itself in this District.  The United States does not take advocating for a life sentence lightly.  No doubt the cost to society of a lifetime of incarceration, with the tangible costs associated with custody, sustenance, medical care, counseling, treatment, and the like, along with the intangible costs associated with the deprivation of liberty to a member of

society, will be high.  But, the cost to society of inviting the defendant back into it will be even higher.  The United States sees no alternative.

          Respectfully submitted,

          BENJAMIN C. GLASSMAN
          United States Attorney

          <u>s/Vipal J. Patel</u>
          Vipal J. Patel (156212 CA)
          First Assistant United States Attorney
          Amy Smith (0081712 OH)
          Assistant United States Attorney
          200 West Second Street, 6th Floor
          Dayton, OH  45402
          Tel: (937) 225-2910
          Fax: (937) 225-2564
          vipal.patel@usdoj.gov
          amy.smith2@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this pleading was filed with this Court on this 25th day of June 2018, a process which automatically provides an electronic copy to all counsel of record.

                                    <u>s/Vipal J. Patel</u>
                                    VIPAL J. PATEL (156212 CA)
                                    First Assistant United States Attorney