```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
 2                         AT DAYTON


 3    _____ )
                                          )
 4    UNITED STATES OF AMERICA,           )
                                          )
 5                     Plaintiff,         ) CASE NO. 3:16-CR-026-TMR
                                          )
 6              -vs-                       )
                                          )
 7    ROBERT STEVEN JONES,                ) SENTENCING
                                          )
 8                     Defendant.         ) VOLUME I
      _____)
 9


10                 TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE THOMAS M. ROSE,
11         UNITED STATES DISTRICT JUDGE, PRESIDING
                 WEDNESDAY, JUNE 27, 2018
12                     DAYTON, OH


13
      APPEARANCES:
14
      For the Plaintiff:      VIPAL J. PATEL, ESQ.
15                            AMY M. SMITH, ESQ.
                              U.S. Attorney's Office
16                            P.O. Box 280
                              200 W. Second Street
17                            Dayton, OH  45402


18
      For the Defendant:      JON PAUL RION, ESQ.
19                            Rion, Rion and Rion
                              130 West Second Street
20                            Suite 2150
                              Dayton, OH  45402
21


22        Proceedings recorded by mechanical stenography,
      transcript produced by computer.
23
                     Mary A. Schweinhagen, RDR, CRR
24               Federal Official Court Reporter
                     200 West Second Street
25                   Dayton, OH  45402
                     *** *** *** ***
```

```
1           P-R-O-C-E-E-D-I-N-G-S                    1:47 P.M.

2              THE COURT:  We are before the Court in the matter of

3    the United States of America versus Robert Steven Jones.  This

4    is Case Number 3-16-cr-26.  The Court previously convened the

5    matter for the purposes of hearing the pending motions.  The

6    Court has also entertained in chambers upon the record

7    exhibits or evidence that is being presented to the Court for

8    the purposes of disposition that the Court found to be

9    necessary and appropriate presentation in that form.

10      The Court now stands ready to proceed or continue with

11   the dispositional hearing.  The Court's plans are to deal with

12   the initial information that the Court will share with the

13   record.  The Court understands that there are some objections

14   to be heard.  There are also some preliminary presentations

15   that counsel wishes to present in addition to the exhibits

16   that the Court has already been presented.

17      The Court will be then, after listening to those

18   arguments and those presentations, the Court will be taking

19   the matter under advisement, will be setting a time certain in

20   which time the Court will come back, render its rulings and

21   findings with regard to any issues that are before the Court,

22   and will proceed and complete disposition at that point.

23      So I guess for the purposes of clarification, again,

24   would counsel enter their appearance for the record.

25              MR. PATEL:  Good afternoon, Your Honor.  Vipal Patel
```

1    and Amy Smith for the United States; accompanied by the case

2    agent, FBI Special Agent Andrea Kinzig.

3         MR. RION:  Jon Paul Rion for Mr. Jones.

4         THE COURT:  Previously, on September the 25th, 2017,

5    the defendant entered a plea of guilty to Counts 1 through 7

6    and 9 through 11, as well as Count 13 of the Superseding

7    Indictment pursuant to a Plea Agreement.  The Court accepted

8    the pleas to those counts and referred the matter to the

9    probation department for a presentence investigation.

10        The Court has received the resulting report and

11   recommendation from probation and does stand ready to proceed,

12   but would first confirm with counsel that they are in receipt,

13   of course, of the report and its recommendations, have had the

14   opportunity to review such, and then the Court will be

15   prepared to entertain argument or presentation with regard to

16   objections that the Court does understand are now pending.

17        So, Mr. Patel.

18        MR. PATEL:  Yes, Your Honor, we have received and

19   reviewed the PSR.

20        THE COURT:  It's my understanding the government at

21   this point in time doesn't have objections to the PSI.  The

22   government does have some, I guess, argument with regard to

23   disposition concerning -- concerning the Court's consideration

24   of the factors and the offense levels, criminal history

25   category; is that correct?

1           MR. PATEL:  That's right, Your Honor.

2           THE COURT:  Mr. Rion.

3           MR. RION:  Your Honor, there is a few objections.

4   The one I want to draw the Court's attention to and argue is

5   there was a 2-point enhancement for obstruction of justice.

6   If you look at Application Note 5, Subsection B, it does

7   indicate that simply making a false statement, not under oath,

8   to law enforcement generally is not the type of conduct that's

9   covered.

10      In this case, from looking at the Government's Exhibits

11  in 3, 4, and 5, I think the allegation is that after police

12  become involved Mr. Jones has phone conversation or text

13  conversation with various people that he was involved with.

14  And when asking them whether or not they have talked to their

15  parents and/or law enforcement or things like that, there is a

16  suggestion or discussion that's had about maybe not disclosing

17  that information.  So it seems as if making a false statement

18  not under oath wouldn't apply of asking another person to make

19  a false statement that's not under oath also wouldn't apply.

20      So that was the main argument.  Plus it was after the

21  fact, these statements, after the person had either spoken to

22  their parent and/or law enforcement, they are lamenting the

23  cooperation while trying to direct them to either do so or

24  not.  So that's that argument.

25      As relates to paragraph 179, again, two of the counts

1      that carry the life sentence, I guess in the big picture of

2      this case, may not necessarily be the most serious counts as

3      far as the conduct that's involved.  And so those counts, you

4      know, they have a life sentence.  The guideline range for

5      those counts isn't necessarily -- well, isn't a life sentence.

6      It's only the enhancements on the other counts that don't

7      carry life that end up transferring over here.

8           So it could be argued under 3553(a) as well, but I think

9      it just shows that looking at the counts itself and the

10     guideline range for those counts as the legislature and the

11     guideline commission sees the seriousness of those offenses,

12     you couldn't get to a life sentence on those two counts and

13     the other two counts because of the guidelines.  And on the

14     other counts, you can't get to a life sentence because of

15     statutory restrictions.  So that's that argument.  I really

16     don't have any evidence for it except what's been put on.

17     It's just argument.

18          I think we have already dealt with the issue as it

19     relates to the registration.  The Court's already made a

20     ruling at that hearing already on that point.  I am not going

21     to re-argue it.

22          The only other part is he was placed in a category V

23     and -- but to the conduct maybe that was relied upon to get

24     him to a category V was conduct that may have occurred when he

25     was a juvenile.  So I'd just like the Court to consider that.

1          THE COURT:  Thank you.

2      Mr. Patel, Ms. Smith.

3          MR. PATEL:  Yes, Your Honor.  Your Honor, if I may

4  take the issues in turn, dealing first with the obstruction of

5  justice enhancement.

6      I'd first point out that in the calculations under the

7  sentencing guideline, that enhancement or that adjustment,

8  technically more accurate, only applies once, and that's with

9  respect to Count 3 which involves Minor -- what's been

10  referred to as Minor A.  The reason, the factual underpinnings

11  as explained by the probation officer is that Mr. Jones

12  attempted to suborn perjury.

13      To dig down even further, Your Honor now has before him a

14  binder of certain communications between Mr. Jones and various

15  teenage girls.  One of them is Minor A.  If I may direct your

16  attention, Your Honor, to Exhibits 3, 4, and 5 of the exhibit

17  binder, these are to what I was just referring.  These are the

18  communications between Mr. Jones and Minor A.  And the

19  sequence and the substance, of course, is quite telling.  The

20  first one marked as Government's Exhibit 3 actually occurred

21  just prior to the interview.  There was an interview set up

22  between the FBI and Minor A, and what's going on is Mr. Jones

23  and Minor A are having preinterview conversations about it via

24  messaging.  The text speaks for itself.

25      And in Exhibit 3, there is nothing overt where in this

1    particular conversation Mr. Jones is directly instructing or

2    telling Minor A to lie to the FBI.  Instead, it's much more

3    subtle.  They are talking about the interview.  Mr. Jones is

4    expressing love.  This, once the Court has an opportunity to

5    review this in full, I am sure the Court will come to the

6    appreciation or realization the same that I did, which is that

7    this is grooming.  It's the classic style of grooming where

8    the defendant is seeking to have or impress upon Minor A

9    that -- a sense of love and affection during the same time

10   that -- when he knows full well that Minor A will be speaking

11   with the FBI very shortly.

12        In fact, it boarders on the part of influencing the

13   witness's statements to the FBI where, if you look on the very

14   first page of Exhibit 3, or at least the first page of the

15   actual transcripts, about a third of the way down there is a

16   statement by Mr. Jones, represented by Xolker, by the way --

17   X-O-L-K-E-R -- telling the minor, "I would just not say

18   anything, to be honest."  Referring to the meeting about to be

19   held between the FBI and Minor A.

20        All right.  More direct comes after the interview.  And

21   after the interview there is a postmortem.  That's marked as

22   Government's A.  It's sort of a recap, okay, of what happened

23   during the interview.  During that conversation, it's not so

24   subtle anymore.  Your Honor could look at the third page of

25   the exhibit.  This is actually the second page of the actual

1    transcript.  We have taken the liberty of highlighting in

2    yellow the pertinent section of the conversation.  But, once

3    again, we have Mr. Jones and Minor A communicating, having an

4    extensive conversation about the interview.  And then at one

5    point during the conversation the following occurs:

6    "Mr. Jones:  If you get a chance or have to testify, say it

7    was another guy.  But you didn't want to say because you

8    didn't want me to find out you cheated."

9        If that wasn't enough, he followed it up with the next

10   statement, "And that you lied to the FBI about it being me."

11       That is not grooming.  That is not a subtle pressure.

12   That is a simple and straightforward instruction/directive to

13   a minor who is already under the influence of Mr. Jones to

14   alter or, if she has an opportunity to testify or speak with

15   them again, to say something different than what she just told

16   the FBI.

17       That, Your Honor, is not simply declining to speak to the

18   FBI, exercising of rights.  It's not simply Mr. Jones giving a

19   false statement.  That goes beyond that type of level of

20   activity.  It is a direct attempt to influence what could have

21   happened in this court under oath, which is testimony from a

22   minor victim, and an attempt by Mr. Jones to alter what that

23   person had to say.  That's classic, classic obstruction of

24   justice.

25       Now, I should point out that, as I started this

1    conversation, Your Honor, this has to do with one count that

2    ultimately doesn't go towards the ultimate calculation of the

3    sentencing guidelines.  There is a rule, a provision in the

4    rules that allows Your Honor to decide that it's not going to

5    decide this, because if the Court makes a determination that

6    it just does not materially alter or it will not alter the

7    sentencing guideline calculations or the Court's imposition of

8    sentence, the Court can invoke that right under the rules and

9    decline to rule.  We don't feel that's necessary because we

10   feel there's sufficient evidence to support the probation

11   officer's conclusion even though ultimately it is academic in

12   its effect.

13        Turning to the other objection, which has to do with a

14   life sentence, or the life recommendation.  There are indeed,

15   as counsel pointed out, two counts at play here where a life

16   sentence is possible.  That is Counts 3 and 6.  The statutory

17   penalties for those are ten years up to life.

18        As to the bulk of the other counts, Counts 1, 2, 4, 5, 7,

19   9, 10, and 11, the statute of parameters for each count are 15

20   years up to 30 years.  That's essentially 240 years, if I'm

21   doing my math correctly, of potential sentence because all

22   those counts could, in the Court's discretion, run

23   consecutively.  So, in essence, the statutory parameters as

24   set forth by Congress are 240 years, plus two life terms, plus

25   10 years.  Two life terms, 240 years, plus 10 years.  Congress

1    has given sufficient leeway for the sentencing commission to

2    do what it did, which was to find that the overall guideline

3    calculation, taking into account all the sentencing factors,

4    should in this case be life.  And that's the way the

5    sentencing guidelines work.

6         The sentencing commission clearly feels that that is just

7    because that's the way that they have calculated Mr. Jones's

8    guidelines.  And given that there are two life terms at play,

9    plus another 240 years, plus 10, it's difficult to envision

10   how a life term calculated by the commission and the

11   guidelines is unjust.

12        Your Honor, we'll leave it at that with respect to the

13   guideline calculations because I think that's all that's at

14   issue, and will reserve our full discussion of 3553(a) factors

15   when the time is appropriate, with the Court's permission.

16        THE COURT:  Mr. Rion, obviously they are your

17   objections.  Final word?

18        MR. RION:  I don't want to be repeating myself.  I

19   think the application notes apply.

20        THE COURT:  Mr. Patel, I would like to hear -- I

21   know you filed something just recently with regard to the

22   Court's -- the issue with regard to acceptance and timely

23   notification, or acceptance anyway.  For the Court's

24   edification, while it considers all of everything that is

25   being presented to it before it makes its final determination,

1    I would just like to hear a summary of that or a presentation

2    of that argument.

3         MR. PATEL:  Certainly, Your Honor.

4         The probation officer in its -- the probation office in

5    its presentence investigation report recommended that the

6    defendant be afforded the acceptance of responsibility and

7    timely notification points.  That's set forth on page 25,

8    paragraphs 180 and 181.

9         Now, that recommendation occurred, as far as I'm aware,

10   prior to the time that the defendant filed even his first

11   motion to withdraw.  After that, that motion that was unclear,

12   the Court may recall, that the defendant was seeking to

13   withdraw only his guilty plea as to Count 13 or as to all of

14   the counts.  I believe the Court inquired, and I believe

15   counsel responded, that there was some argument they were

16   making that it was as to all of the counts.

17        We were unclear, Your Honor, and essentially was willing

18   at that point to give the defendant the benefit of the doubt

19   and not make a point about acceptance of responsibility at

20   that point because, frankly, it was unclear as to whether he

21   was seeking to withdraw as to all counts or not.

22        That clearly resolved itself six days ago when the

23   defendant has yet again moved to withdraw his guilty pleas,

24   and this time he is seeking, no doubt -- or sought to withdraw

25   his guilty pleas as to all counts.  That acceptance of

12

1    responsibility adjustment is designed to afford somebody who,

2    according to the terms of the application or the guideline,

3    has clearly, clearly demonstrated an acceptance of

4    responsibility for his offense.

5        I just can't see how somebody has clearly accepted

6    responsibility for his offense when they not just once but

7    twice seek to withdraw from it.  Acceptance of responsibility

8    means doing what he did at the time of his guilty plea,

9    acknowledging that he did each and every essential element of

10   the crime.  He did that, the acceptance of responsibility,

11   when he pled guilty.  He reversed that when he sought

12   permission from Your Honor to redo that, to undo that guilty

13   plea.

14       He -- as Your Honor is aware, there is a two-part

15   component to the acceptance of responsibility adjustment.

16   There is a minus 2-level reduction for acceptance of

17   responsibility, and technically when we call it acceptance of

18   responsibility, we group together, in common parlance, the

19   minus 2 adjustment plus -- and the minus 1 adjustment for

20   timely notification.

21       As a technical matter, that minus 1 adjustment requires a

22   motion from the government.  Our Plea Agreement requires the

23   government to do none of this.  We are not obligated to

24   recommend or make any recommendations with regard to

25   acceptance of responsibility or timely notification, and nor

1    do we.

2         The timely notification adjustment is designed to save

3    the government resources, not just to prepare for -- while

4    preparing for trial, and also to permit the government to

5    allocate resources elsewhere efficiently.  Instead, we have

6    been allocating resources dealing with Mr. Jones's twice now

7    motions to withdraw.

8         It just seems to the United States that it's

9    counterintuitive, contrary to the law, and contrary to the

10   facts to grant someone a reduction in the guidelines when they

11   are to this day saying I should not -- I should be relieved

12   from my guilty plea.

13        This again, though -- I am obligated to point out that

14   this yet is another one of those calculations, though, that

15   ultimately is academic.  It makes for a nice law school exam

16   and -- but in practical terms, whether the acceptance of

17   responsibility adjustment or the timely notification

18   adjustment is granted, it doesn't matter.  And I point that

19   out in our papers that the sentencing guidelines max out at

20   43.  He is well above that.  The guidelines calculated scored

21   him at a 51.  And so whether the 3-point adjustment is given,

22   we are talking 51 or 48, which then ultimately gets reduced to

23   43 no matter what.  So under any calculation, whether Your

24   Honor grants the acceptance of responsibility or not, or

25   declines to make a ruling under the same provision I referred

1    to previously, the end result is the same, 43, and it's still

2    life.

3         Thank you, Your Honor.

4              THE COURT:  Thank you.

5         Do you want to be heard on that, Mr. Rion?

6              MR. RION:  Your Honor, acceptance of responsibility

7    according to the guidelines is responsibility for all his

8    involvement in the offense of conviction.  Never once has

9    Robert Jones attempted to tell this Court that he's not

10   responsible for the conduct except for when a document was

11   provided to counsel after the pleas were made, and it had to

12   do with the terms of the registration.  And that was the full

13   extent of the argument.  It wasn't that he wasn't supposed to

14   register, it was the terms of the registration.

15        At the time the plea was entered, the government was

16   alleging that he was facing a lifetime registration

17   requirement.  I think it was shown later, arguably, that it

18   was a limited registration requirement.  So the argument that

19   was raised had nothing to do with the argument made against

20   acceptance of responsibility.  It had do with acceptance of

21   responsibility after that plea was entered.

22        On that second motion, on the second motion to vacate

23   that he filed, the issue dealt with testimony that came

24   through an agent that was required by the defendant after the

25   plea was made where that agent seemed to go into some further

1    description of the distinction between the nit itself and the

2    mechanism in which the nit could gain access to a computer.

3    It had nothing to do with his acts or his involvement.  It had

4    to do with a technical point that came to his attention after

5    the fact.

6         So I don't think that the government can really state

7    that he has not accepted responsibility.  He pled to

8    essentially every major count in the Indictment.  He hasn't

9    done anything in the PSR to refute the factual basis of that.

10   And, frankly, it's beyond question that he hasn't tried to cut

11   hairs as to his acts.

12              THE COURT:  All right.  Thank you.

13         Final word?

14              MR. PATEL:  No, Your Honor.

15              THE COURT:  Well, the Court's going to take this all

16   under advisement.  I have been provided here today a number of

17   different things that the Court needs to consider and needs to

18   look at.  The Court does plan, however, to reset this.  I

19   believe we are going to reset it with counsel's calendar as

20   quickly as we can.  However, the Court does plan at that point

21   in time to go through its regular process and procedure with

22   regard to a disposition.

23         I will at that time, however, even though we had

24   arguments and we had presentations here today, the Court does

25   also plan, again, to afford an opportunity for counsel and, of

16

1  course, Mr. Jones, an opportunity to make any presentation

2  they so desire at that time before the Court renders its final

3  decision.

4       So we will try to set it as quickly as we can.  The Court

5  just needs some time because I have been presented arguments

6  and documents which I need to consider in making a

7  determination.

8       Anything further to come before the Court today?

9           MR. PATEL:  Nothing, Your Honor.

10          MR. RION:  No.  Thank you for your time, Judge.

11          THE COURT:  We will set a time as quickly as we can.

12  Thank you very much.

13          THE COURTROOM DEPUTY:  All rise.  This court stands

14  in recess.

15      (Proceedings concluded at 2:14 p.m.)

16

17

18

19

20

21

22

23

24

25

```
1                      CERTIFICATE OF REPORTER

2

3          I, Mary A. Schweinhagen, Federal Official Realtime

4    Court Reporter, in and for the United States District Court

5    for the Southern District of Ohio, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code that the

7    foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is

10   in conformance with the regulations of the Judicial Conference

11   of the United States.

12

13   s/Mary A. Schweinhagen

14   _____  November 5, 2018

15   MARY A. SCHWEINHAGEN, RDR, CRR
     FEDERAL OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25
```