1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
2                    AT DAYTON

3    _____ )

4    UNITED STATES OF AMERICA,      )
                                 )
5                  Plaintiff,   ) CASE NO. 3:16-CR-026-TMR
                                 )
6                -vs-        )
                                 )
7    ROBERT STEVEN JONES,       ) SENTENCING
                               )
8                Defendant.   ) VOLUME II
    _____)

9

10                 TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE **THOMAS M. ROSE**,
11       UNITED STATES DISTRICT JUDGE, PRESIDING
             THURSDAY, JULY 26, 2018
12                  DAYTON, OH

13

    **APPEARANCES:**

14

    **For the Plaintiff:**      **VIPAL J. PATEL, ESQ.**
15                     **AMY M. SMITH, ESQ.**
                     U.S. Attorney's Office
16                     P.O. Box 280
                     200 W. Second Street
17                     Dayton, OH  45402

18

    **For the Defendant:**     **JON PAUL RION, ESQ.**
19                     Rion, Rion and Rion
                     130 West Second Street
20                     Suite 2150
                     Dayton, OH  45402

21

22      Proceedings recorded by mechanical stenography,
    transcript produced by computer.
23

               **Mary A. Schweinhagen, RDR, CRR**
24              Federal Official Court Reporter
               200 West Second Street
25               Dayton, OH  45402
               *** *** *** ***

19

```
1          P-R-O-C-E-E-D-I-N-G-S                    10:38 A.M.

2              THE COURT:  May I see counsel a second?

3          (Sidebar off the record.)

4              THE COURT:  We are before the Court this morning in

5      the matter of the United States of America versus Robert

6      Steven Jones.  This is a continuation of a sentencing and

7      disposition hearing that was commenced on June the 27th, at

8      which time the Court took care of several matters, including

9      several motions that were filed by Mr. Jones, or were

10     registered by Mr. Jones, as well as viewed some evidence and

11     presentations made by the government in chambers, and heard

12     arguments with regard to objections that have been asserted by

13     defendants through counsel, as well as a presentation by the

14     government with regard to credit for -- credit for acceptance

15     of responsibility on behalf of the defendant.

16         So the Court today is reconvening the sentencing hearing

17     and will be sharing with the record prefatory comments with

18     regard to what has been charged, where we are at at this point

19     in time, and then will be prepared to rule on the objections

20     and the matters before the Court.  Of course, counsel will be

21     given an opportunity if they want to say anything in addition

22     to what's been presented.

23         Once the Court has made its rulings with regard to the

24     objections, the Court will then proceed with the one factor of

25     sentence, being the advisory guideline calculations.  Once
```

1     it's done, as it does in all its dispositions, I will share

2     with the record the parameters of sentencing within which the

3     Court will be considering dispositions, and then I will afford

4     an opportunity for counsel to address the Court.  And then, of

5     course, if Mr. Jones wishes to address the Court, he will be

6     given that opportunity prior to making any final disposition.

7          Any question about how the Court's proceeding.

8               MR. PATEL:  No, Your Honor.

9               MR. RION:  None, Your Honor.

10               THE COURT:  And the Court's going to allow everybody

11     to remain seated because the Court has quite a bit to share

12     with the record.

13          On February the 25th, 2016, a grand jury did return an

14     11-count Indictment charging Mr. Jones as follows:

15          Count 1 charged him with enticing a Minor Female A to

16     engage in sexual activity, a violation of 18, United States

17     Code, 2422(b).

18          In Counts 2 and 3, Mr. Jones was charged with producing

19     child pornography involving Minor Female A, in violation of

20     18, United States Code, 2251(a) and (e).

21          Count 4 charged him with enticing a Minor Female B to

22     engage in sexual activity, in violation of 18, United States

23     Code, 2422(b).

24          Count 5 charged Mr. Jones with engaging in sexually

25     explicit conduct with a persuaded Minor B to engage in

1    sexually explicit conduct for the purpose of producing a

2    visual depiction of such conduct, a violation of 18, United

3    States Code, 2251(a) and (e).

4        Count 6 charged Mr. Jones with receiving visual

5    depictions of a minor engaged in sexually explicit conduct, a

6    violation of 18, United States Code, 2252(a)(2) and (b)(1).

7        Count 7 charged Mr. Jones with attempting to persuade a

8    Minor Victim C to engage in sexually explicit conduct for the

9    purpose of producing a visual depiction of such conduct, that

10   in violation of 18, United States Code, 2251(a) and (e).

11       Count 8 charged him with attempted production of child

12   pornography, a violation of 18, United States Code, 2251(a)

13   and (e).

14       Count 9 charged Mr. Jones with production of child

15   pornography, a violation of 18, United States Code, 2251(a)

16   and (e).

17       Count 10 charged him with possession of child

18   pornography, in violation of 18, United States Code,

19   2252(a)(4)(B) and (b)(2).

20       And Count 11 charged him with committing a felony offense

21   involving a minor while he was required to register as a sex

22   offender, a violation of 18, United States Code, 2260A.

23       That Indictment, the original Indictment, contained a

24   forfeiture allegation, specifically with regards to Counts 1

25   and/or 4 of the Indictment.

1        On July the 14th, 2016, the grand jury then returned a

2    13-count Superseding Indictment charging Mr. Jones as a

3    defendant in all counts.  The counts mirrored the original

4    Indictment, with the exception of adding two counts, Counts 1

5    and 2, charging the defendant with Infant Male A to -- used

6    Infant Male A to engage in sexually explicit conduct for the

7    purposes of producing visual depictions of such conduct.

8    These depictions were transported by Mr. Jones into the

9    Southern District of Ohio between June the 2nd, 2014, and

10   August the 21st of 2015.

11       As I indicated, in addition to these new counts, Counts 1

12   and 2, Counts 3 through 13 of this Superseding Indictment did

13   mirror the original Indictment as the Court has shared with

14   the record.

15       On September the 25th, Mr. Jones pled guilty to Counts 1

16   through 7, 9 through 11, and 13 of the Superseding Indictment.

17   That plea was made pursuant to a Plea Agreement.  The Plea

18   Agreement was conditioned on that the defendant did at that

19   time reserve the right to have an appellate court review the

20   Court's denial of a motion to suppress, motion for a Franks

21   hearing, and a motion to compel discovery.

22       The Court did accept Mr. Jones's pleas to the charges in

23   the Superseding Indictment, made findings of guilty, and

24   referred the matter to probation for a presentence

25   investigation.

1      The Court has received the report and its

2   recommendations, has reviewed such, stands ready to proceed

3   with disposition.

4      On June the 27th, the Court heard arguments with regard

5   to objections that were made by the defendant with regard to

6   the presentence report and its recommendations.  Specifically,

7   those objections were to Paragraph Numbers 85 and 86 of the

8   presentence report, Paragraph Number 179 of the pretrial

9   report, and paragraph 193 of the pretrial report.

10      First, I guess, the Court would again ask for a

11   reaffirmation that counsel is in receipt of the report and its

12   recommendations, and I guess a reaffirmation of the government

13   that there are no objections to the report and recommendation.

14            MR. PATEL:  Yes as to all.

15            THE COURT:  Mr. Rion, just an affirmation again that

16   you have received the report, you have reviewed it with

17   Mr. Jones, and other than the three objections that the Court

18   has heard argument upon, there are no objections?

19            MR. RION:  We have no further argument.  I guess, I

20   don't know if there is going to be an issue as it relates to

21   acceptance, which technically would be part of the report, but

22   that's -- I guess there is no objections from the government,

23   then I don't --

24            THE COURT:  Well, the government did argue, the

25   government did argue or did make a presentation requesting

1    that the Court, well, consider not adopting the recommendation

2    of probation with regard to the awarding of the acceptance of

3    responsibility.  The Court heard those arguments at the June

4    27th hearing.

5        But with regard to all these objections and with regard

6    to that presentation, does the government have anything

7    further?

8            MR. PATEL:  Not anything further, and that better

9    summarizes the government's position, Your Honor.  When I said

10   yes as to all, I was not mindful of the acceptance of

11   responsibility and timely notification issue which Your Honor

12   identified.  But as we argued before, it's academic.

13           THE COURT:  Well, as the Court always makes an

14   effort to do, I want everyone to be able to share with the

15   record and put upon the record everyone's positions, and so we

16   did have that.

17       Mr. Rion, I would give you an opportunity, do you have

18   anything with regard to the objections that the Court has

19   heard argument on and is prepared to rule on?  Or I will even

20   let you comment, if you want, on the acceptance.

21           MR. RION:  I think we made arguments last time we

22   were here.  I don't need to repeat the same arguments, but

23   they are the same arguments.

24           THE COURT:  Thank you.

25       That having been said, the Court has considered the

1    arguments and the presentation of counsel with regard to the

2    objections.  Specifically with the objections to paragraph 85

3    and 86, in that objection, the defendant did object to a

4    2-level enhancement for obstruction of justice pursuant to

5    Guideline 3C1.1 and to the resulting adjusted offense level.

6    I believe the argument was that the defendant did not admit to

7    behavior and does not remember that occurring.

8         The Court finds, based upon the arguments of counsel, the

9    government's exhibits, that the Court does find that the

10   defendant did have communication with minors/victims

11   encouraging through expressions of love and caring and then on

12   certain occasions directly attempted to influence or direct

13   these young people to lie to the authorities.  The Court does

14   find that the objections to the adjustment recommended by the

15   probation department in the presentence report is overruled.

16        With regard to paragraph 179, counsel for the defendant

17   does object to a finding that the combined adjusted offense

18   level of 51 creates an unjust recommendation.  After hearing

19   the arguments with regard to that, the Court does find that

20   the combined offense level of 51, there is no objection, I

21   believe, well, I know, as to the correctness of the

22   calculation, and the Court finds that these calculations and

23   the resulting ranges were not considered by probation

24   department, and that they were applied pursuant to Chapters 2,

25   3, and 4 of the guidelines manual, the cumulative effect of

1    the defendant's offenses involved multiple victims and indeed

2    resulted in an appropriate combined adjusted offense level.

3    The Court would overrule that objection.

4        As to paragraph 193, the objection by counsel is he

5    objects to the determination of the criminal history category,

6    believing that the criminal history category should be a II

7    rather than a III.  The Court, in reviewing the information

8    before the Court and the calculations, finds that under 4B1.5,

9    Mr. Jones's criminal history category would be a III.  As well

10   as the criminal history points of 5, which the Court feels has

11   been correctly calculated, we equate to a III.  The objection

12   will be overruled.

13       All right.  Now, the Court, having ruled on the

14   objections, will be proceeding in its normal course with

15   regard to a disposition.  The Court is going to share with the

16   record its findings with regard to the guideline calculation

17   under the United States Sentencing Guidelines.  Once the Court

18   has done that, the Court will then share with the record the

19   parameters of sentencing within which the Court will be

20   considering Mr. Jones's disposition.  Then the Court will

21   afford an opportunity for counsel to make whatever

22   presentation they wish to make at that point; and, then, of

23   course, Mr. Jones would have an opportunity to address the

24   Court.

25       Any questions about how the Court is to proceed at this

1    point?

2             MR. PATEL:  No, Your Honor.

3             MR. RION:  None, Your Honor.

4             THE COURT:  All right.  The Court has considered the

5    advisory guideline calculation under the United States

6    Sentencing Guidelines pursuant to the Supreme Court cases of

7    *Booker* and *Fanfan*.  The Court has utilized the 2016 edition of

8    the guidelines manual.

9         The Court, after a review of the recommendations

10   contained within the presentence report, is adopting those

11   recommendations in total.  Specifically, the Court finds as

12   follows:

13        Pursuant to Guideline 3D1.1(a)(1), when a defendant has

14   been convicted of more than one count, the Court shall group

15   the counts resulting in conviction into distinct groups of

16   closely related counts by applying the rules of 3D1.2 of the

17   guidelines.

18        Counts 1 and 2 of this Superseding Indictment were not

19   grouped together pursuant to 3D1.2(b) because even though they

20   involve the same victim, they represented separate instances

21   of fear and risk of harm as detailed in Application Note

22   Number 4 under Guideline 3D1.2.

23        Similarly, even though Counts 3, 4, and 5 involved Minor

24   Female A and Count 6 and 7 involved Minor Female B, they are

25   not grouped together as each count represents a separate

1    instance of fear and harm.

2         Count 9, 10, and 11 each involve a different victim and

3    will be, therefore, calculated differently.

4         Count 13 will not be grouped by any other count because

5    the sentence will be governed by statute.

6         Under Guideline 1B1.2(c), a Plea Agreement containing a

7    stipulation that specifically establishes the commission of

8    additional offenses shall be treated as if the defendant had

9    been convicted on a separate count of conspiracy for each

10   offense that the defendant conspired to commit.

11        In the Statement of Facts, which is attached to the Plea

12   Agreement, which the Court accepted, it was established that

13   the defendant produced child pornography involving four

14   additional minor victims.  A fifth minor victim was enticed

15   via a teen dating website to engage in prohibited sexual acts

16   with the defendant.  The offenses against these victims will

17   be the subject of a pseudo count and calculated separately.

18        The following counts are scored as follows:

19        Count 1, Production of Child Pornography.  The guideline

20   for that violation, a violation of 18, United States Code,

21   2251(a), is Guideline 2G2.1.  The offense level is a 32 under

22   2G2.1, subdivision (a).

23        According to the Guideline 2G2.1(b)(1)(A), if a victim

24   had not attained the age of 12, 4 levels are added to the base

25   offense level.  In this case, the Court finds that Infant Male

1   A was seven months old at the time of the offense.  Therefore,

2   the 4 levels are added.

3       In addition, under 2G2.1(B)(2)(b)(i), if an offense

4   involved the commission of a sexual act in the conduct

5   described in 18, U.S.C., 2241(a) or (b), 4 levels are added.

6   The Court finds that in this case the defendant did use force

7   and violence to engage in a sexual act with Infant Male A.

8   Therefore, the 4 levels are added.

9       In addition, under Guideline 2G2.1(b)(4)(A), if the

10  offense involved material that portrays sadistic or

11  masochistic conduct, 4 levels are added.  In the video which

12  encompasses this count, the defendant slapped, punched, shook,

13  restrained, and suffocated Infant Male A.  He also placed his

14  penis in contact with the infant's mouth and ejaculated on

15  infant's mouth and face.  This behavior qualifies as sadistic

16  behavior; therefore, the 4 levels are added.

17      According to Guideline 2G2.1(b)(5), if a defendant was a

18  parent, relative, or legal guardian of a minor involved in the

19  offense, or if the minor was otherwise in the custody, care,

20  or supervisory control of the defendant, there is an increase

21  of 2 levels.  Infant Male A is the defendant's son and the

22  child was in his care at the time of the offense.  The 2

23  levels are added.

24      The adjusted offense level therefore for Count 1 is a 46.

25      Count 2, the guideline for this violation, again a

1    violation of 18, United States Code, 2251(a), is in Guideline

2    2G2.1.  The base offense level is 32 according to 2G2.1(a).

3    Again, the following specific offense characteristics apply.

4        Under 2G2.1(b)(1)(A), in this case Infant Male A was

5    seven months old at the time of the offense.  Therefore, under

6    2G2.1(b)(1)(A), the 4 levels are added.

7        Under 2G2.1(b)(2)(B)(i), if the offense involved the

8    commission of a sexual act in the conduct described in 18,

9    U.S.C., 2241(a) or (b), there is 4 levels added.  The

10   defendant used force and violence to engage in a sexual act

11   with the Infant Male A.  Again, the 4 levels are added.

12       According to 2G2.1(b)(4)(A), if the offense involved

13   material that portrayed sadistic or masochistic conduct, 4

14   levels are added.  The video encompassed this count, and the

15   defendant tied a diaper on the infant's face.  He sat on the

16   victim's face and slapped and hit him.  Then he choked the

17   infant to the point he became unconscious.  This behavior

18   qualifies as sadistic behavior.  Therefore, the 4-level

19   increase is applicable.

20       According to 2G2.1(b)(5), if the defendant was a parent,

21   relative, legal guardian of the minor involved in the offense,

22   or if the minor was otherwise in the custody, care,

23   supervisory control of the defendant, there is an increase of

24   2 levels.  Infant Male A is the defendant's son, and therefore

25   the 2 levels are added.

1      The adjusted offense level for Count 2 is a 46.

2      Count 3. The guideline for a violation of 18, United

3 States Code, 2422(b) is in Guideline 2G1.3, the coercion or

4 inducement of a minor. Pursuant to the cross-referenced

5 Guideline 2G1.3(C)(1), since the offense involved causing,

6 transporting, permitting, or offering or seeking, by notice or

7 advertisement, a minor to engage in sexually explicit conduct

8 for the purpose of producing a visual depiction of such

9 conduct, 2G2.1 is used to determine the offense level because

10 it results in a higher offense level. The base offense level

11 is 32 pursuant to 2G2.1(a).

12      The specific offense characteristics that applies are as

13 follows:

14      2G2.1(b)(1)(B). If the offense involved a minor who

15 attained the age of 12 years but not attained the age of 16

16 years, there is an increase of 2 levels. In this case, Minor

17 A was 15 years old at the time of the offense; therefore, the

18 2 levels are added.

19      Pursuant to 2G2.1(b)(2)(A), if the offense involved a

20 commission of a sexual act or a sexual contact, 2 levels are

21 added. Sexual act or sexual contact has the meaning given

22 that term in 18, U.S.C., 2246. In this case, the defendant

23 did have sexual intercourse with Minor A, which is one of the

24 activities described in the statute. The 2 levels are added.

25      According to Guideline 2G2.1(b)(6), if for the purpose of

1    producing sexually explicit material or for the purpose of

2    transmitting such material live the offense involved, A, the

3    knowing misrepresentation of the participant's identity to

4    persuade, induce, entice, coerce, or facilitate the travel of

5    a minor to engage in sexually explicit conduct; or the use of

6    a computer or interactive computer service to persuade,

7    induce, entice, coerce, or facilitate the travel of a minor to

8    engage in sexually explicit conduct; or to otherwise solicit

9    participation by a minor in such conduct; or solicit

10   participation with a minor in a sexually explicit conduct, 2

11   levels are added.

12       The Court finds that the defendant met Minor A on a

13   dating-focused social-networking website and enticed her into

14   meeting him to have sexual intercourse.  Therefore, the 2

15   levels are added.

16       The Court also finds, as it has ruled in the objections

17   arguments, that there is an adjustment for obstruction of

18   justice.  And pursuant to 3C1.1, the defendant did obstruct

19   justice when he attempted to suborn perjury with regard to

20   Minor A after he knew he was under investigation.  2 levels

21   are added.

22       The adjusted level therefore for Count 3 is a 40.

23       Count 4.  The guideline for a violation of 18, United

24   States Code, 2251(a), Production of Child Pornography, is

25   Guideline 2G2.1.  That base offense level is 32.

```
 1          The following specific offense characteristics apply:

 2          Under 2G2.1(b)(1)(B), if the offense involved a minor who

 3   had attained the age of 12 years but not attained the age of

 4   16 years, an increase of 2 levels.  In this case, Minor A was

 5   15 years old at the time of the instant offense, and the 2

 6   levels are added.

 7          Under 2G2.1(b)(2)(A), if the offense involved a

 8   commission of a sexual act or sexual contact, 2 levels are

 9   added.  Sexual act or sexual contact has the meaning given in

10   the term, that term in 18, U.S.C., 2246.

11          In this case, the defendant had sexual intercourse with

12   Minor A, which is one of the activities described in the

13   statute.  Therefore, the 2 levels are added.

14          Under 2G2.1(b)(6), if for the purpose of producing

15   sexually explicit material or for the purpose of transmitting

16   such material live, the Court -- the material live, the

17   offense involved the knowing misrepresenting of a

18   participant's identity to persuade, induce, entice, coerce, or

19   facilitate the travel of a minor to engage in sexually

20   explicit conduct; or the use of a computer or interactive

21   computer service to persuade, induce, entice, coerce, or

22   facilitate the travel of a minor to engage in sexually

23   explicit conduct; or to otherwise solicit participation by a

24   minor in such conduct; or solicit participation with a minor

25   in sexually explicit conduct, 2 levels are added.
```

In this case, the defendant met with the Minor A on a dating-focused social-networking website on August the 2nd, 2015. He then used an interactive-enabled iPhone to persuade her to pose in a sexually explicit manner in order to take photos -- photographs of her. Therefore, the 2-level increase is added, making the adjusted offense level for Count 4 a 38.

Count 5. A guideline for a violation of 18, United States Code, 2251(a), Production of Child Pornography, is Guideline 2G2.1. The base offense level is 32.

The following specific offense characteristics apply:

2G2.1(b)(1)(B), again, if the offense involved a minor who attained the age of 12 but had not attained the age of 16 years, there is an increase of 2 levels. Again, Minor A was 15 years old at the time, and therefore the 2 levels are added.

Under 2G2.1(b)(2)(A), if the offense involved the commission of a sexual act or sexual contact, the 2 levels are added. In this case, the defendant had sexual intercourse with Minor A, which is one of the activities described in the statute. 2 levels are added.

In accordance with 2G2.1(b)(6), again, if for the purpose of producing sexually explicit material or for the purpose of transmitting such material live the offense involved the knowing misrepresentation of the participant's identity to persuade, induce, entice, coerce, or facilitate the travel of

1   a minor engaged in sexually explicit conduct; or the use of a

2   computer or an interactive computer service to persuade,

3   induce, entice, coerce, or facilitate the travel of a minor to

4   engage in sexually explicit conduct; or to otherwise solicit

5   participation by a minor in such conduct; or solicit

6   participation with a minor in sexually explicit conduct, 2

7   levels are added.

8        In this case, the defendant met with Minor A on a

9   dating-focused social network website on October the 13th of

10  2015.  He then used an Internet-enabled iPhone to persuade her

11  to pose in a sexually explicit manner in order to take

12  photographs of her.  Therefore, the 2 levels are added.

13       The adjusted offense level therefore for Count 5 is a 38.

14       Count 6, Coercion and Enticement of a Minor.  The

15  guideline for a violation of 18, United States Code, 2422(b),

16  is Guideline 2G1.3.  Pursuant to the cross-reference to

17  guideline -- at Guideline 2G1.3(c)(1), since the offense

18  involved causing, transporting, permitting or offering, or

19  seeking by notice or advertisement, a minor to engage in

20  sexually explicit conduct for the purpose of producing a

21  visual depiction of such conduct, 2G2.1 is used to determine

22  the offense level because it results in a higher offense

23  level.  The base offense level is a 32 pursuant to 2G2.1(a).

24       The following specific offense characteristics apply:

25       Under 2G2.1(b)(1)(B), if the offense involved a minor who

1    had attained the age of 12 years but not attained the age of

2    16, there is an increase of 2 levels.  Minor B was 15 years

3    old at the time of the offense; therefore, 2 levels are added.

4         Pursuant to Guideline 2G2.1(b)(2)(A), if the offense

5    involved the commission of a sexual act or sexual contact, 2

6    levels are added.  In this case, the defendant had sexual

7    intercourse with Minor B, which is one of the activities

8    described in the statute; therefore, the 2 levels are added.

9         According to Guideline 2G2.1(b)(6), if for the purpose of

10   producing sexually explicit material, or for the purpose of

11   transmitting such material live, the offense involved the

12   knowing misrepresentation of a participant's identity to

13   persuade, induce, entice, coerce, or facilitate the travel of

14   a minor to engage in sexually explicit conduct; or the use of

15   the computer or an interactive computer service to persuade,

16   induce, entice, coerce, or facilitate the travel of a minor to

17   engage in sexually explicit conduct; or to otherwise solicit

18   participation by a minor in such conduct; or solicit

19   participation with a minor in sexually explicit conduct, 2

20   levels are added.

21        The defendant did meet Minor A on an Internet-based

22   text-messaging application and enticed her to meet him to have

23   sexual intercourse; therefore, 2 levels are added.

24        The adjusted offense level for Count 6 is a 38.

25        Count 7, Production of Child Pornography.  The guideline

1    for that violation, a violation of 18, United States Code,

2    2251, is Guideline 2G2.1.  The base offense level is 32.

3        The following specific offense characteristics apply:

4        According to Guideline 2G2.1(b)(1)(B), if the offense

5    involved a minor who had attained the age of 12 years but not

6    16 years, there is an increase of 2 levels.  Minor B was 15

7    years old at the time; therefore, the 2 levels are added.

8        Pursuant to Guideline 2G2.1(b)(2)(A), if the offense

9    involved the commission of a sexual act or sexual contact, 2

10   levels are added.  In this case, the defendant had sexual

11   intercourse with Minor B, which is one of the activities

12   described in this statute; therefore, the 2 levels are added.

13       According to 2G2.1(b)(6), for the purpose of producing

14   sexually explicit material, and for the purpose of

15   transmitting such material live, the offense involved the

16   knowing misrepresentation of a participant's identity to

17   persuade, induce, entice, coerce, or facilitate the travel of

18   a minor to engage in sexually explicit conduct; or the use of

19   a computer or an interactive computer service to persuade,

20   induce, entice, coerce, or facilitate the travel of a minor to

21   engage in sexually explicit conduct; or to otherwise solicit

22   participation by a minor in such conduct; or solicit

23   participation with a minor in sexually explicit conduct, 2

24   levels are added.

25       In this case, the defendant communicated with Minor B on

1    an Internet-based text-messaging application.  And on August

2    the 30th, 2015, he then used the Internet-enabled iPhone to

3    persuade her to pose in a sexually explicit manner in order to

4    take photographs of her.  The 2 levels apply.

5         Therefore, the adjusted offense level for 7, Count 7, is

6    a 38.

7         Count 9, Attempted Production of Child Pornography.  The

8    level -- the guideline for a violation of 18, United States

9    Code, 2251 is Guideline 2G2.1.  The base offense level is 32.

10        Again, according to 2G2.1(b)(6), if for the purpose of

11   producing sexually explicit material, or for the purpose of

12   transmitting such material live, the offense involved the

13   knowing misrepresentation of a participant's identity to

14   persuade, induce, entice, coerce, or facilitate the travel of

15   a minor to engage in sexually explicit conduct; or the use of

16   a computer or interactive computer service to persuade,

17   induce, entice, coerce, or facilitate the travel of a minor to

18   engage in sexually explicit conduct; or to otherwise solicit

19   participation by a minor in such conduct; or solicit

20   participation with a minor in sexually explicit conduct, the 2

21   levels are added.

22        In this case, the defendant communicated with Minor C on

23   an Internet-based text-messaging application using his iPhone

24   6.  He requested nude photographs of Minor C's vagina in an

25   attempt to induce her to produce child pornography and send it

1    to him.  Defendant intended for the victim to send him

2    pictures via the interactive computer service.  Therefore, the

3    2 levels are added.

4        The adjusted offense level therefore for Count 9 is a 34.

5        Count 10, Attempted Production of Child Pornography.  The

6    guideline is -- for the violation of 18, United States Code,

7    2251(a) is Guideline 2G2.1.  The base offense level is a 32.

8        The following specific offense characteristics do apply:

9        2G2.1(b)(1)(B), if the offense involved a minor who

10    attained the age of 12 but not attained the age of 16, there

11    is an increase of 2 levels.  In this case, Minor D was 15

12    years old at the time of the instant offense; therefore, the 2

13    levels are added.

14        According to 2G2.1(b)(6), if for the purpose of producing

15    sexually explicit material or for the purpose of transmitting

16    such material live the offense involved the knowing

17    misrepresentation of the participant's identity to persuade,

18    induce, entice, coerce, or facilitate the travel of a minor to

19    engage in sexually explicit conduct; or the use of a computer

20    or interactive computer service to persuade, induce, entice,

21    coerce, or facilitate the travel of a minor to engage in

22    sexually explicit conduct; or to otherwise solicit

23    participation by a minor in such conduct; or to solicit

24    participation with a minor in sexually explicit conduct, 2

25    levels are added.

1    In this case, the defendant communicated with Minor D or

2    an Internet-based text-messaging application.  On October the

3    8th and 9th of 2015, he used an Internet-enabled iPhone to

4    request that she send nude photographs of her vagina and

5    buttocks to him.  This enhancement is applicable because the

6    defendant intended for child pornography to be created.

7    Therefore, 2 levels are added.

8    The adjusted offense level for Count 10 is a 36.

9    Count 11, Production of Child Pornography.  The guideline

10   for a violation of 18, United States Code, 2251(a) is

11   Guideline 2G2.1.  The base offense level is a 32.  According

12   to 2G2.1(b)(1)(B), if the offense involved a minor who

13   attained the age of 12 but not 16, there is an increase of 2

14   levels.  In this case, Minor E was 13 years old at the time of

15   the instant offense.  Therefore, 2 levels are added.

16   Again, according to 2G2.1(b)(6), for the purpose of

17   producing sexually explicit material, or for the purpose of

18   transmitting such material live, the offense involved, A, the

19   knowing misrepresentation of the participant's identity to

20   persuade, induce, entice, coerce, or facilitate the travel of

21   a minor to engage in sexually explicit conduct; or to use a

22   computer or an interactive computer service to persuade,

23   induce, entice, coerce, or facilitate the travel of a minor to

24   engage in sexually explicit conduct; to otherwise solicit

25   participation by a minor in such conduct; or to solicit

1    participation by a minor in sexually explicit conduct, 2

2    levels are added.

3        In this case, the defendant communicated with Minor E on

4    an Internet-based text-messaging application.  From October

5    the 12th, 2015, to October the 18th, 2015, the defendant

6    requested photographs and videos of Minor E engaged in

7    sexually explicit conduct.  She produced and sent the

8    defendant seven images and five videos of Minor E engaged in

9    sexually explicit conduct.  Therefore, the 2 levels are added.

10        The adjusted offense level for Count 11 is a 36.

11        Pseudo Count 1(a), The Production of Child Pornography.

12    Minor F -- Minor Victim F in the Statement of Facts.  The

13    guideline for a violation of 18, United States Code, 2251(a)

14    is Guideline 2G2.1.  Base offense level is a 32.

15        According to 2G2.1(b)(1)(A), if the victim had not

16    attained the age of 12, 4 levels are added to the base offense

17    level.  Minor F was seven years old at the time of the

18    offense.

19        Pursuant to Guideline 2G2.1(b)(2)(A), if the offense

20    involved the commission of a sexual act or sexual contact, 2

21    levels are added.  In this case, the defendant touched and

22    fondled the child's vagina, which is one of the activities

23    described in the statute.  Therefore, 2 levels are added.

24    Pseudo Count 1(a)'s adjusted offense level is a 38.

25        Pseudo Count (b), Production of Child Pornography and

1    Coercion and Enticement of a Minor.  This is Minor G in the

2    Statement of Facts.  The guideline for a violation of 18,

3    United States Code, 2251 is Guideline 2G2.1.  Base offense

4    level is a 32.

5        According to 2G2.1(b)(1)(B), if the offense involved a

6    minor who attained the age of 12 but not 16, there is an

7    increase of 2 levels.  Minor G was between 13 and 14 years old

8    at the time of the instant offense.

9        Under 2G2.1(b)(2)(A), if the offense involved the

10   commission of a sexual act or sexual contact, 2 levels are

11   added.  In this case, the defendant engaged in prohibited

12   sexual acts with Minor G, which is one of the activities

13   described in the statute.  Therefore, 2 levels are added.

14       According to 2G2.1(b)(6), if for the purpose of producing

15   sexually explicit material, or for the purpose of transmitting

16   such material live, the offense involved the knowing

17   misrepresentation of a participant's identity to persuade,

18   induce, entice, coerce, or facilitate the travel of a minor to

19   sexually -- to engage in sexually explicit conduct; or the use

20   of a computer or an interactive computer service to persuade,

21   induce, entice, coerce, or facilitate the travel of a minor to

22   engage in sexually explicit conduct; or to otherwise solicit

23   participation; or to solicit participation of a minor in

24   sexually explicit conduct, 2 levels are added.

25       In this case, the defendant communicated with Minor G on

1    an Internet-enabled ZET -- I mean ZTE cell phone from 2013 to

2    early 2015.  At the direction of the defendant, Minor G took

3    16 pictures of herself which constitute child pornography.

4    Additionally, in August of 2013, he took three pictures of

5    lascivious display of Minor G's genitalia.  And therefore 2

6    levels are added to the adjusted offense level.

7         The adjusted offense level then is a 38.

8         Pseudo Count (c), Production of Child Pornography.  Minor

9    H in the Statement of Facts.  The guideline for a violation of

10   18, United States Code, 2251 is Guideline 2G2.1.  The base

11   offense level is a 32.

12        The specific offense characteristics that apply:

13        Under 2G2.1(b)(1), if the instant offense involved a

14   minor who attained the age of 12 years but not 16, an increase

15   of 2 levels.  Minor H was 13 years old at the time of the

16   offense.

17        According to 2G2.1(b)(6), if for the purpose of producing

18   sexually explicit material, or for the purpose of transmitting

19   such live -- such material live, the offense involved the

20   knowing misrepresentation of a participant's identity to

21   persuade, induce, entice, coerce, or facilitate the travel of

22   a minor to engage in sexually explicit conduct; or to use the

23   computer or an interactive service to persuade, induce,

24   entice, coerce, or facilitate the travel of a minor to engage

25   in sexually explicit conduct; or to otherwise solicit

1    participation by a minor in such conduct; or solicit

2    participation of a minor in sexually explicit conduct, 2

3    levels are added.

4         Defendant communicated with Minor H on an Internet-based

5    text-messaging application.  At the direction of defendant,

6    Minor H took three pictures of herself which constitute child

7    pornography and sent them to the defendant.  Therefore, the 2

8    levels are added.

9         The adjusted offense level for Pseudo Count 1(c) is a 36.

10        Pseudo Count 1(d), Production of Child Pornography.

11   Minor I in the Statement of Facts.  The guideline for a

12   violation of 18, United States Code, 2251 is 2G2.1.  The base

13   offense level is a 32.

14        2G2.1(b)(2)(A), if an offense involved the commission of

15   a sexual act or sexual contact, 2 levels are added.  Sexual

16   act or sexual contact has a meaning given in 18, U.S.C., 2246.

17   And in this case, the defendant did engage in sexual

18   intercourse with Minor I, which is one of the activities

19   described in the statute.  Therefore, 2 levels are added.

20        Again, in accordance with 2G2.1(b)(6), if for the purpose

21   of producing sexually explicit material, or for the purpose of

22   transmitting such material live, the offense involving the

23   knowing misrepresentation of a participant's identity to

24   persuade, induce, entice, coerce, or facilitate the travel of

25   a minor to engage in sexually explicit conduct; or the use of

1    a computer or an interactive computer service to persuade,

2    induce, entice, coerce, or facilitate the travel of a minor to

3    engage in sexually explicit conduct; or to otherwise solicit

4    participation by a minor in such conduct; or solicit

5    participation with a minor in sexually explicit conduct, 2

6    levels are added.

7        In this case, the defendant communicated with Minor I on

8    a dating/social-networking website and an Internet-based

9    text-messaging application. On July the 10th, 2013, the

10    defendant took three photos of Minor I which constitute child

11    pornography. Therefore, the 2 levels are added.

12        The adjusted offense level then for Count -- Pseudo Count

13    1(d) is 36.

14        Pseudo Count 1(e), Coercion and Enticement. Minor J in

15    the Statement of Facts. The guideline for a violation of 18,

16    United States Code, 2422(b) is Guideline 2G1.3. The base

17    offense level is a 28.

18        According to Guideline 2G1.3(b)(2)(B), if a participant

19    otherwise unduly influences a minor to engage in prohibited

20    sexual conduct, there is an increase of 2 levels. According

21    to Application Note 3B under this guideline, in a case in

22    which a participant is at least 10 years old -- older than the

23    minor, there shall be a rebuttable presumption that this

24    subsection applies. In this case, Minor J was 14 years old at

25    the time of the offense; the defendant was 26. The 2 levels

1    apply.

2         Under 2G1.3(b)(3)(A), if the offense involved the use of

3    a computer or interactive computer service to persuade,

4    induce, entice, coerce, or facilitate the travel of a minor to

5    engage in the prohibited sexual conduct, there is an increase

6    of 2 levels.

7         Defendant did communicate with Minor J via Internet-based

8    text-messaging application and enticed her to meet him to

9    engage in prohibited sexual acts.

10        Under 2G1.3(b)(4)(A), if the offense involved the

11   commission of a sex act or sexual contact, there is an

12   increase of 2 levels.  In this case, the defendant did engage

13   in prohibited sexual acts with Minor J.  Therefore, 2 levels

14   are added.

15        The adjusted offense level for Pseudo Count 1(e) is a 34.

16        Count 13, Commission of a Felony Offense Involving a

17   Minor by a Person Required to Register as a Sex Offender.

18        According to Guideline 2A3.6(b), since the defendant was

19   convicted of 18, U.S.C., 2260A, the guideline sentence is a

20   term of imprisonment required by statute.  Chapters 3 and 4

21   shall not apply to any count of conviction covered by this

22   guideline.

23        This being a multiple-count case, the Court will apply

24   the multiple-count adjustment under Guideline 3D1.4.  3D1.4

25   required the Court to assign units for the purposes of this

1 calculation. The Court is to count as 1 unit a group with the

2 highest offense level and then 1 additional unit for each

3 group that is equally serious, from 1 to 4 levels less

4 serious. Count as 1/2 a unit any group that is 5 to 8 levels

5 less serious than the group with the highest offense level.

6     Count 1, an adjusted offense level of 46 has one unit.

7     Count 2, adjusted offense level of 46 has one unit.

8     Count 3, adjusted offense level of 40 has .5 units.

9     Count 4, adjusted offense level of 38, .5 units.

10     Count 5, adjusted offense level of 38, .5 units.

11     Count 6, adjusted offense level of 38, .5 units.

12     Count 7, adjusted offense level of 38, .5 units.

13     Count 9, adjusted offense level of 34, no units.

14     Count 10, adjusted offense level of 36, no units.

15     Count 11, adjusted offense level of 36, no units.

16     Count 1(a), adjusted offense level of 38, .5 units.

17     Count 1(b), adjusted offense level of 38, .5 units.

18     Counts 1(c), (d), and (e), with adjusted offense levels

19 of 36, 36, and 34, no units.

20     The number of total units, therefore, is 5.5.

21     The greater of the adjusted offense levels above, or as

22 part of the group, is a 46. There is an increase in the

23 offense level therefore of 5. The combined adjusted offense

24 level is a 51.

25     The Court has heard objections by the government;

 1   however, the Court -- I don't believe it's a formal objection,

 2   but the Court declines to accept the argument.  The Court is

 3   going to award 2 points reduction and a 1-point reduction for

 4   acceptance of responsibility and timely notification under

 5   3E1.1(a) and 3E1.1(b).

 6        The offense of conviction in this case is a covered sex

 7   crime under 4B1.1.  Career offender does not apply.  The

 8   defendant committed the instant offense of conviction

 9   subsequent to sustaining at least one sex offense conviction.

10   Therefore, the defendant is considered a repeat and dangerous

11   sex offender against minors.  The offense level is the

12   greatest of the Sections 4B1.5(a)(1)(A) or (B).  In this case,

13   the offense level determined under chapters 2 and 3 is 51, is

14   the greatest and the applicable -- and applicable offense

15   level under 4B1.5(a)(1)(A).

16        Pursuant to Chapter 5, Part A, Comment Note 2, since the

17   total offense level exceeds 43, the offense level is found to

18   be a 43.

19        The Court has reviewed the criminal history information

20   on Mr. Jones.  The Court finds that his criminal convictions

21   resulted in a subtotal of 3.  According to Guideline 4A1.1(d),

22   since the defendant was subject to a criminal justice sentence

23   in the Third Judicial District Court of Dona Ana County, New

24   Mexico, in Case Number 307CR201201220, 2 points are added.

25   The total criminal history score is a 5.  According to the

1    sentence table in Chapter 5, Part A, the criminal history

2    score of 5 establishes a criminal history category of III.

3        The Court further finds that the defendant is a repeat

4    and dangerous sex offender against minors; and, therefore, the

5    criminal history category shall be the greatest of the

6    criminal history category determined under Chapter 4, Part B,

7    or criminal history category V, which is this -- which in this

8    case is a V pursuant to 4B1.5.

9        The Court, having made those findings, will provide the

10   Court and share with the record the parameters of sentencing

11   within which the Court will be considering Mr. Jones's

12   disposition pursuant to statute and the guidelines.

13       Under the statute, Counts 1, 2, 4, 5, 7, 9, and 10 -- I

14   am sorry -- 1, 2, 4, 5, 7, 9, 10, and 11, the minimum term of

15   imprisonment is 15 years.  The maximum term is 30 years per

16   count according to 18, United States Code, 2251(a) and (e).

17       Counts 3 and 6, the minimum term of imprisonment is 10

18   years, the maximum term is life per count according to 18,

19   U.S.C., 2422(b).

20       Count 13, the minimum term of imprisonment is 10 years

21   and the maximum term is life according to 18, United States

22   Code, 2260A.  The term of imprisonment on Count 13 must be

23   imposed consecutive to any other counts.

24       With regard to the guidelines, Counts 1, 2, 3, 4, 5, 6,

25   7, 9, 10, and 11, based upon the total offense level of 51 and

a criminal history category of V, the guideline imprisonment range is life. Application Note 2, Under Chapter 5, Part A of the sentencing table, instructs that in rare cases a total offense level of less than 1 nor more than 43 may result from the application of the guidelines.

An offense level of more than 43 is to be treated as an offense level of 43 as the Court has done. The offense level of 43 and the criminal history category of V results in the guideline imprisonment range of life. However, the statutory maximum term of imprisonment in Counts 1, 2, 4, 5, 7, 9, 10, and 11 is 30 years. Count 13, the guideline sentence is the minimum term of imprisonment required by the statute according to Guideline 2A3.6.

And, of course, pursuant to the guidelines, the imprisonment range is in Zone D. The minimum term shall be satisfied by a term of imprisonment.

Supervised release under the statute for Counts 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, and 13 shall be five years to life. Under the guidelines, supervised release for Counts 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, and 13 requires a term of supervised release of five years. Therefore, the guideline requirements for a term of supervised release is five years to life per count. Multiple terms of supervised release are to run concurrent.

Defendant is ineligible for probation consideration under

1    both the statute and the guidelines.  If the Court elected to

2    impose a fine, under Counts 1, 2, 3, 4, 5, 6, 7, 9, 10, 11,

3    and 13, the maximum fine under the statute is $250,000 per

4    count.

5         Under the guidelines, Counts 1, 2, 3, 4, 5, 6, 7, 9, 10,

6    11, and 13, the fine range for these offenses is from 50,000

7    to 250,000.

8         Under Counts 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, and 13,

9    there is a special assesment of $100, which is mandatory

10   pursuant to 18, United States Code, 3013.

11        With regard to Counts 3, 4, 5, 6, 7, 9, 10, 11, and 12

12   and 13, the defendant is also subject to the provision of the

13   Justice For Victims of Trafficking Act of 2015.  In addition

14   to the assessment imposed under Section 3013, the Court shall

15   assess an amount of $5,000 per count on any non-indigent

16   person or entity convicted of the offense under 18, United

17   States Code, Chapter 77, 901A, 110, 117, or Section 274 of the

18   Immigration and Nationality Act under 18, U.S.C., 3014.

19        Restitution under the statute may be ordered.

20   Restitution shall be ordered under the guidelines.

21        Those are the parameters of sentencing within which the

22   Court will be considering disposition.  Obviously, the Court

23   has now shared the Court's findings with regard to the one

24   factor of sentencing, being the advisory guideline

25   calculation.

 1        The Court will now share -- will now allow counsel to

 2    share with the record any presentation that they wish to make

 3    at this point in time with regard to the factors, any of the

 4    factors of sentencing, disposition, or mitigation of

 5    disposition.

 6        Mr. Patel.

 7            MR. PATEL:  Thank you, Your Honor.  May I ask that

 8    the courtroom monitors be turned on.

 9            THE COURT:  All right.

10            MR. PATEL:  Good morning, Your Honor.  Vipal Patel,

11    Assistant United States Attorney for the United States.  With

12    me -- I'm accompanied by Amy Smith, Assistant United States

13    Attorney, along with FBI Agent, Special Agent -- I am sorry --

14    FBI Special Agent Andrea Kinzig, who is the case agent.  And

15    also present is Laura Jensen, United States probation officer,

16    who should be commended for the preparation of the presentence

17    investigation report, Your Honor.  It is very extensive and

18    complex.

19        We are here for sentencing, and the Court has already

20    gone over much of the preliminary matters that I had prepared,

21    which are the statutory custodial parameters.  So I will

22    obviously go through them very, very quickly.

23        The bottom line here is that effectively the range, Your

24    Honor, is 15 years to a lifetime imprisonment, plus 10 years.

25    The sentencing guidelines Your Honor has already covered and

1    concluded are indeed life plus 10 years.  The government

2    concurs.

3        The point here, though, is that the sentencing guideline

4    recommendations of life plus 10 years is off the chart, to use

5    the terms colloquially and literally.  The chart ends at 43 as

6    an offense level.  And here, as Your Honor has already

7    indicated, the combined offense level scores out at a 51.  And

8    only by virtue of the guidelines of a chart maxing at 43 does

9    that 51 get reduced down to 43.

10        Another point here about the guidelines, Your Honor, is

11   that the 43 -- well, the 43 results in a life advisory

12   recommendation no matter what the criminal history is.  So

13   even without the application of the repeat sexual offender

14   against a minor adjustment in the criminal history that took

15   it up to a level V, it really doesn't matter.  Even if this

16   was a criminal history category I, the recommendation or the

17   advisory recommendation would still be life.

18        Your Honor's covered the obstruction of justice point

19   being that it is, in fact, well deserved.  Your Honor

20   indicated that there was evidence and there indeed is evidence

21   highlighted in the exhibits that the government submitted,

22   including this one on the screen.

23        I'll skip through the acceptance of responsibility and

24   timely notification as Your Honor has already ruled.

25        Let's skip to the meat of the matter.  This case, as Your

1   Honor remembers, starts with investigators not even in this

2   district; investigators applying for a warrant to utilize

3   something called, what has been colloquial referred to as a

4   nit.  That nit identified -- simply was utilized pursuant to

5   judicial authority to identify the defendant as a subscriber

6   and user of a child pornography site on the dark web that was

7   dedicated to child pornography.

8        That then led to the investigation, as Special Agent

9   Kinzig conducted, that uncovered and revealed what I will

10  submit and go out on a limb and say is amongst the worst, if

11  not the worst, offense conduct ever witnessed or seen,

12  certainly by myself, and I am going to posit by this Court as

13  well.

14       Counts 1 and 2, as Your Honor has now seen, can be best

15  described as a deviant sex-and-torture video of a baby.  Not

16  just any baby, the defendant's own son.

17       Counts 3, 4, and 5, 6 through 8, 9, 10, 11 all encompass

18  conduct that can be best described as manipulative, conniving,

19  and coercive.  That conduct mirrors nonoffense conduct,

20  conduct that gets included as relevant conduct under the

21  guidelines.  What I am referring to here is on the one hand

22  you have offense conduct, Counts 1 and 2, that involve the

23  torture video and sex video involving a baby.  And there is

24  also relevant conduct that that mirrors, such as the fondling

25  of a seven-year-old girl.  A girl, by the way, who lived with

1    and was being cared for by the defendant.

2        There is also additional teenage girls that the defendant

3    coerced, enticed, employed all sorts of methods and efforts to

4    try to get to engage in sex acts and to take videos and

5    pictures of the girls in sexually explicit positions, and he

6    was quite successful.

7        He used love as a manipulative tool.  That is best

8    described -- and I will get into parts of that in the exhibits

9    that Your Honor has been -- has reviewed.  Love was a

10   manipulation.  It was not an emotion.  Love was used by the

11   defendant to engage in a scheme to get the teenage girls

12   particularly to engage in their behavior.

13       Interesting point here, Your Honor, is that love was used

14   as a tool for one victim at the same time -- if Your Honor

15   looks at the dates of the offenses, one fact that will jump

16   out to Your Honor is that they are about all the same time.

17   So while he is telling one victim how much he loves her, loves

18   her body parts, loves the way she looks, and loves everything

19   about her -- and he is saying that obviously to get his

20   objective, which is sex and sexual images and videos -- he is

21   at the same time telling other minors the very same thing,

22   using love as a manipulative tool.

23       Often we hear in child portation in this court and

24   others:  Well, Your Honor, you know, there wasn't contact in

25   this case.  Here there was not just contact, there was the

1    worst contact of the worst kind:  sex, deviant sex, babies,

2    toddlers, and teenage girls.

3         The offense conduct, as I indicated, Your Honor, includes

4    a glimpse into the defendant's manipulative and coercive mind.

5    And one example, just one example is demonstrated in

6    Government's Sentencing Exhibit 7.  Those messages that will

7    be exchanged between the defendant and Minor A make out, if

8    you follow along, make out a concerted effort by the defendant

9    to pressure this particular minor to engage in what's been

10   referred to as a threesome or three-way.  They go to great

11   efforts -- the defendant goes to great efforts to try to

12   convince this person, this minor, to engage in a sexual

13   activity with yet another minor.

14        The conversation goes on and on and on and gets very,

15   very sexually explicit, so much so that I do not wish to

16   repeat that here in this courtroom.  It ends, though, it ends

17   with one of the minors saying this:  "I'm sorry you are mad at

18   me."  That's the minor.

19        Jones:  "It was planned for like one day."

20        I am sorry.  The minor still:  "It was planned for like

21   one day so it is not even a big deal."

22        Jones:  "It is to me."

23        The minor:  "Oh, well, I'm sorry."

24        Jones:  "It's okay.  There is still time for you to

25   change your mind."

1       The minor:  "I'm not going to.  Just stop."

2       The defendant didn't stop.  Turn to Government's Exhibit

3   sentencing -- Sentencing Exhibit Number 9.  He clearly didn't

4   stop because here's what he says to a friend:  "I had a

5   threesome last night."

6       The friend, "Neat."

7       Next message is a picture proving that the defendant had

8   that threesome.

9       The defendant:  "Two 15-year-olds."

10      Friend:  "Nice.  LMAO."

11      Jones:  "LOL.  Oh, my god.  Dude, it was insane.  Oh,

12  yeah.  We got drunk and stuff.  And all f'd and then slept

13  together."

14      It was not about love, Your Honor.  It was about sex and

15  conquests and achieving his objective.  He did.

16      These text messages, these kit messages, and other types

17  of various messages give yet some examples of what the

18  history, mainly the characteristics of this defendant, are.

19      Exhibit 13 provides a sample.  In Exhibit 13, you will

20  see, Your Honor, that Mr. Jones is talking to another

21  individual, including conversations like this:

22      Jones:  "Okay.  That's fine.  Hey, what's the youngest

23  girl you've messed around with?"

24      This other individual:  "Eight.  You?"

25      Jones:  "Nine.  What did you do with her?"

1      Jones:  "How many girls you gonna bring?  And do you want
2   me to bring toys?"
3      The other individual:  "Two girls, age 9 and 11.  You
4   cool with that?  And hell yes on toys.  Will you let me use
5   toys on you, too, sexy?"
6      Jones:  "Yeah, I'm down with anything."
7      Jones:  Can I 'f' either of the girls?"
8      The other individual, "Yes.  You are down for all things.
9   The one thing all three love is cowgirling."
10     It ends with this:
11     Jones:  "That vid, named Orally --" presumably in
12   reference to a video named Orally that seemingly was exchanged
13   between them because it was the subject of the message.  "Was
14   that someone you know?  By the way, if we meet up, I might be
15   able to bring a six-year-old with me.  What's that worth?"
16     There are other messages that give similar insight into
17   what makes Mr. Jones tick.  Exhibit 14 is one of those
18   messages.  In that, he discusses -- you know, I am hesitant to
19   reveal what was discussed exactly, what's being literally said
20   in this exchange because it's so graphic and so grotesque.
21   They are talking about, again, having sexual acts with minors,
22   engaging in having children for the specific purpose of
23   engaging in sex acts with them, and so forth.
24     Exhibit 15 is also very similar.  So graphic, Your Honor,
25   that I am also reticent to discuss or recite in open court the

1    specific text messages.  But, again, it talks in this mixture

2    of fantasy world of having children specifically to engage in

3    grotesque and deviant sex acts against those children, and at

4    the same time weaving in reality.  And what I mean by that is

5    there is a specific reference that you will see over and over

6    again in these types of messages that have a sense of reality

7    and give us a glimpse into exactly what's going on in

8    Mr. Jones's mind.

9         An example's on the screen right now, where they are

10   talking about having children for the purpose of engaging in

11   sexual acts with the girl.  And Jones says, "I punch her in

12   the stomach and strangle her until she almost passed out and

13   then let go over and over."

14       And I ask this question:  Does that sounds familiar?

15   Yes, that's exactly what happened in the torture and sex

16   videos with the baby.

17       Lastly, as an example, again, Exhibit 16 evidences yet

18   similar themes where there is this discussion.  It's hard to

19   tell whether it's reality or fantasy.  It's grotesque.  And no

20   matter which way you cut it, there is a discussion between

21   Jones and somebody that operates by Midnight Whisper 83

22   moniker about having children, having a child, boys and girls,

23   engage in sex with the mother, with Jones as the father.  And,

24   again, this reference to passing out or smothering comes up

25   again.

1        Jones:  "I like smothering him, by the way, until he

2   passes out."

3        I will let the text speak for itself.

4        Response:  "Um, I love smothering things.  Have you been

5   smothering him?"

6        Jones:  "Yeah."

7        This is a reference to Jones's other child at this point.

8   Not the baby depicted in the sex and torture videos and

9   included in Counts 1 and 2, but yet another baby that he had

10  later on in this time period.

11       This goes on.  The conversation keeps going and going and

12  going.  It gets more serious.  If the initial part of the

13  conversation can't be described as serious enough, it gets

14  downright violent, deviant, but revealing.  They start talking

15  about murder, about killing people.  Again, there is this

16  weaving of fantasy and reality.

17       But the other participant in this conversation

18  essentially takes the initiative and starts talking about

19  childhood feelings of wanting to kill people.  And then it

20  comes up, "Well, have you killed somebody?"  Referring to

21  Jones.

22       And Jones responds and said, "Yeah.  She was 25."

23       "Cool, hmm."

24       No wonder he got scared when the FBI started snooping.

25  So obviously there had been discussion about Special Agent

1    Kinzig's investigation, and there is the weaving of reality

2    into fantasy.

3         "LOL.  Well, I left no evidence for anything," Jones

4    says.

5         "Good" is the response.

6         Jones:  "And I never even had what they were looking

7    for."

8         Response:  "LOL.  That's good."

9         Jones:  "LOL.

10        "One day I want you to tell me your disposal method,"

11   asking Jones.

12        Jones:  "I'll tell you in person.  LOL."

13        The other person:  "LOL.  Sounds good to me.  So really

14   you truly are a full-fledged serial killer.  When we first

15   started talking, you done --" let me repeat that -- "you done

16   the one girl, but have you done others?  If not, what made you

17   decide to go after others?"

18        Answer:  "'Cause it's amazing."

19        And that's the point I want to leave off with, Your

20   Honor.  This is what's in the mind.  This is what makes the

21   defendant tick.  This is what we're asking this Court to

22   protect society from.  And something that's not going to go

23   away.  Not going to go away now.  It's not going to go away 10

24   or 20 years from now.  This has been something that all the

25   medical professionals that have examined the defendant have

1    told Your Honor in various reports and through the presentence

2    investigation report, this is something the defendant had been

3    living with since the beginning, since he was a young child.

4    These type of feelings -- rape, molestation, sexually deviant

5    behavior, and even murder -- these are things that excite him.

6    It's amazing to him.  These are things that have been a part

7    of his mind and his life all his life, and there is no

8    expectation that it will ever, ever change.

9         He cannot function in a civilized society.  He cannot be

10   let loose unrestrained with liberty.  The liberty must be

11   removed with a fundamental goal of protecting the society.  He

12   cannot function.  We are imploring the Court, impose a

13   statutory sentence and the guideline sentence of life plus 10

14   years.

15        Thank you, Your Honor.

16            THE COURT:  Thank you.

17        Mr. Rion, if you and Mr. Jones could approach the podium.

18        Mr. Rion.

19            MR. RION:  Well, the Court has to make a difficult

20   decision here, and we've all seen the video.  And seen the

21   pictures.

22        I guess I take issue with a life sentence for a couple of

23   reasons:  If we were to ask ourselves, okay, why is Mr. Jones

24   the way Mr. Jones is, or at least was during this behavior

25   that he's pled to and admitted to, we're not left without an

1    answer, and we're not left scratching our heads.  He was a

2    victim.  He was a victim when he was two and a half years old.

3        And when he was a victim, there really wasn't a lot of

4    investigation.  There weren't criminal charges brought against

5    the parents or anybody else involved in the satanic cult.  And

6    there wasn't a remarkable amount of therapy given, although

7    some attempts were made.  But the hundreds of thousands of

8    dollars that we are going to spend incarcerating Mr. Jones

9    maybe should have been spent when he was a victim and not when

10   he was a defendant.

11       And his son, who may have no recollection that this ever

12   occurred, or may have a recollection that it occurred, in

13   either respect, I don't see any focus being put on him.  So if

14   his son were to act out in these same ways 25 years from now,

15   is Mr. Patel going to get up and argue that that person needs

16   to be incarcerated for life because of the acts that he's

17   committed.  I guess it just has to be put in perspective.

18       What's the behavior that's driving the concern with this

19   Court.  Again, there is a maximum sentence of 30 years that

20   goes with those videos.  The counts that carry life, I don't

21   think the Court, under those counts, if they were isolated,

22   would impose a life sentence.

23       His father wrote, as you have seen, and seen from the

24   reports that came from the psychologist, after a barrage of

25   testing that was done, there were two things that came out:

1    Number one, there was some affirmation, confirmation that he

2    was a victim.  That he was subject to sexual and physical

3    abuse at a young age.  His father said that even when he was

4    two and a half years old, he was describing people being cut,

5    people being put in pits, and naked people, and acts being

6    committed against him.  They were part of the satanic cult.

7    His father described during the custody battle with foster

8    care back when he -- when the father took custody of Robert,

9    that each parent was sort of trying to throw allegations at

10   the other, confirming that they had both been involved.  It

11   was just who did more to Robert and what he was exposed to.

12       When he went to Butner to get evaluated, there was some

13   sense that if he would receive a 25-year sentence, that there

14   was the likelihood for recidivism at that time -- not now, but

15   at that time -- was medium.  And there was some recommendation

16   that he is not somebody that needs to be locked away for life

17   because he will re-offend.  The thought was that 25 years or

18   more of a sentence would alleviate some of the specific

19   concerns given the age, the amount of time he'd have to think

20   about what he has done.

21       I don't know why people that are victims victimize people

22   in the same way that they were victimized.  That makes no

23   sense to me.  Because my guess is that a part of Robert hates

24   himself deep inside, for what reason he can't really fully

25   understand because of something that was done to him.  Why he

1    would want to then put that on somebody else's shoulders --

2    knowing full well in a way that none of us probably can --

3    what you might be doing to others.

4        The bottom line in this case is it's not a murder case,

5    and it could have been full fantasy what we are talking about.

6    There is no proof that there is any -- that we are talking

7    about homicides, so I don't really put a lot of weight on

8    Mr. Patel's last statement.  But the bottom line is we have

9    this child that was seven months old that may not have any

10   recollection of any activity that Mr. Jones did to him.  May

11   not.  And hopefully his life goes on completely unaffected by

12   this.  And the activity to which he's documented and was on

13   the videos is very serious.  And I am not trying to minimize

14   or try to do anything to take away from what was done, but

15   obviously the pattern of behavior and what was done, the lack

16   of -- I guess we could all imagine things that could have been

17   done that would justify a life sentence that weren't done in

18   this case.  I could go through a list of them.  There is no

19   need to.

20       A sentence of 35 or 40 years, I suppose if you murder

21   someone, that's what you'd probably get.  The courts would

22   find that to be a just sentence.  If you rape somebody

23   multiple times, maybe that's a sentence you would get, and the

24   Court would find that to be a just sentence.

25       But in this case, there is enticement, and there is a

```
 1     very graphic video.  And we have all seen it and been affected

 2     by it.  But there is an explanation to it that I think

 3     shouldn't be used against Robert but, nonetheless, used to

 4     give him at least some hope at the end of the road.

 5         He's 30 years old now.  The idea that if he were to get a

 6     40-year sentence and he'd come out at age 65 or 62 or whatever

 7     it would be, 64, the idea that we can speculate that he would

 8     then be a harm to society when the psychologists say that he

 9     likely would not be to the degree that he is now, and

10     obviously there would be measures and controls.  I mean, 40,

11     30 years from now the technological advancements and the

12     ability to control people and their behavior at that time, I

13     don't think we can even imagine what that will be.

14         So for that I'd ask you to give a term of years, Your

15     Honor, as a sentence.  Thank you.

16             THE COURT:  Thank you.

17         Mr. Jones, do you want to say something?

18             THE DEFENDANT:  Yes, Your Honor.  I'd like to

19     apologize to this Court and to everybody that I've affected.

20     I -- like Jon Paul said, I don't know why I am the way that I

21     am.  But I know I have a long time to think about everything,

22     and I just wanted to apologize.

23             THE COURT:  Thank you.

24         Mr. Jones, as we talked about when you entered your

25     pleas, there are a number of factors of sentencing that the
```

1    Court considers.  Now, I already went through a long
2    dissertation on the guideline calculation.  But that in and of
3    itself is not what determines a disposition.  That is one
4    factor that the Court considers.
5         In addition to the guideline calculation, as you are
6    aware, as we discussed when you entered your pleas, the Court
7    looks at the nature and circumstance of the offense and you,
8    your history, your characteristics, and your background.  And
9    then the Court looks at the types of sentences that are
10   available to me, and then what kind of a sentence is needed.
11   Of course, the Court also is concerned with unwarranted
12   disparities among individuals who are similarly situated.
13   And, of course, if restitution is a factor, the Court
14   considers that.  So there are a number of factors in addition
15   to the guideline calculation that the Court looks at.
16        I look at the nature -- let's start, let's start with the
17   nature and circumstance of this.  I'm looking at information
18   and I'm viewing information, recordings -- and I'll just be
19   real straight with you, Mr. Jones.  I believe that, for lack
20   of a better term, your depraved and evil actions with these
21   minors -- and I'll join, I'll join with what's been said
22   here -- is the worst that I have seen in my 27 years on the
23   bench.  I consider your actions intentional and purposeful.
24   Purposeful and intentional acts that, again, for lack of a
25   better way of expressing it, turns this Court's stomach.

1       I don't underestimate the devastation that you have

2   caused or could have caused to these minors.  I don't believe

3   the devastation can be quantified at this point in time.

4       In addition to the nature and circumstance, I also look

5   at your history, your characteristics, and background.  Now, I

6   have seen many, many criminal histories that are worse.  But

7   that criminal history does raise a flag that these present

8   actions may not have been isolated acts.  More importantly, it

9   gives the Court concern that you could, and in the Court's

10  opinion would, likely re-offend.

11      In looking at the types of sentences available to me, in

12  looking at the nature and circumstance of the offense, or the

13  offenses, I can come to one conclusion.  Although the Court

14  has heard similar types of violations, meaning violations of

15  certain statutes, similar statutes, the same statutes, that

16  have become -- that have come before the Court, I can truly

17  say that none equate to the depth of your intentional and evil

18  acts.  And, again, the Court can only come to one conclusion.

19      When I consider what type of disposition would reflect

20  the seriousness of your acts and promote respect for the law,

21  I can only come to one conclusion.  I believe, based upon the

22  information that's been provided me and the viewing of the

23  recordings, that you really -- and I understand what you are

24  saying here today.  And I understand the arguments of your

25  counsel, Mr. Rion.  Eloquent as always.  But I really don't

1    believe, Mr. Jones, you have any comprehension of the evil

2    that you have performed and that the damage you have caused.

3    And you definitely, based upon all the information that I have

4    heard and read and reviewed, you have no respect for the law.

5         And I don't believe -- although, I guess, you know, here

6    today, as with anyone, I am not separating anyone -- as we

7    stand here today everyone says, well, I have respect for the

8    law.  But I don't believe, I don't believe that.

9         So with a person that has no appreciation of what evil he

10   has done, no appreciation for what damage he has caused, and

11   with total disregard for the law, the Court can only come to

12   one conclusion.

13        So the question before the Court, if I continue to weigh

14   things, what would deter you from re-offending.  What would

15   deter you from protecting our youth, our minors, our community

16   in general from such callous and evil acts.  Again, the Court

17   can only come to one conclusion.

18        Now, the Court has, as part of this evaluation,

19   considered your needs for possible services, educational,

20   vocational, but more medical needs and correctional treatment.

21   My goodness.  And counsel has made an argument that, you know,

22   there possibly could be advancements in certain ways of

23   dealing with this.  I am not sure it's there right now.  I

24   don't believe it is there right now.  But I believe that those

25   factors, regardless of what the Court imposes or what the BOP

1    can offer, in no way, in no way diminishes this Court's

2    concern if you are not incarcerated.

3        Mr. Jones, after considering everything that has been

4    presented to me over all of these months -- reading, watching,

5    listening -- the Court cannot fathom your release back into

6    society.  I could not rest, I could not rest a moment if I

7    knew you at some point would be free to go back into the

8    community and re-offend.  And based upon everything that I

9    have looked at and considered and read and viewed and listened

10   to, I truly believe you would.

11       After considering all the factors of sentencing, and

12   pursuant to the Sentencing Reform Act of 1984 and 18, U.S.C.,

13   3553(a)(1) through (a)(7), it's the judgment of this Court

14   that the defendant, Robert Jones, is hereby committed to the

15   custody of the United States Bureau of Prisons to be

16   imprisoned for a term of 360 months on each of Counts 1, 2, 4,

17   5, 7, 9, 10, and 11.  Sentences to be served concurrently to

18   each other.

19       Mr. Jones is sentenced to life on Count 3 and 6, to be

20   served concurrently with each other and with Counts 1, 2, 4,

21   5, 7, 9, 10, and 11.

22       Mr. Jones is sentenced to 120 months on Count 13, to be

23   served consecutive to all other counts.

24       Mr. Jones shall participate in sex offender treatment

25   while incarcerated if found to be eligible.

1      If released, defendant would serve a term of supervised

2  release for a period of life on each count, terms to be

3  concurrent with each other.

4      Within 72 hours of release from the custody of the United

5  States Bureau of Prisons, he would report to the probation

6  office in the district to which he is released.

7      While on supervised release, he would not commit any

8  federal, state, or local crimes.

9      He would be prohibited from possessing any firearms,

10  ammunition, destructive devices, dangerous weapons.

11      He would not unlawfully possess any controlled

12  substances.  He would refrain from any unlawful use of

13  controlled substances and would be subject to periodic tests.

14      Defendant must cooperate with any DNA as requested by

15  probation or the Bureau of Prisons.

16      The defendant must comply with the requirements of the

17  Sex Offender Registration and Notification Act as directed by

18  the probation office, the Bureau of Prisons, or any other

19  state sex offender registry actions in which the defendant

20  resides, works, or is a student, or was convicted of a

21  qualifying offense.

22      Defendant must comply with the standard conditions of

23  supervised release that have been adopted by the Court, as

24  well as the following special conditions:

25      He would not possess or view sexually explicit material

1   as defined by 18, U.S.C., 2256(2)(a) and (b).

2       He will participate in any sex offender treatment program

3   to include sex offender risk, psychosexual evaluation, and/or

4   other evaluation as needed.

5       He will follow the rules and regulations of sex offender

6   treatment program as implemented by probation, and would sign

7   all necessary authorization forms to release confidential

8   information so that treatment providers, probation officers,

9   polygraph examiners, or others are allowed to communicate

10  openly about the defendant and his relapse prevention plan.

11      Defendant shall be subject to periodic polygraph

12  examinations.

13      Defendant's residence and employment shall be preapproved

14  by probation.

15      And defendant would be required to install software to

16  monitor his computer activities on any computer defendant is

17  authorized to use at the defendant's own expense.  Software

18  may record any and all activity on the defendant's computer,

19  including capturing keystrokes, application information,

20  Internet use history, email correspondence, and chat

21  conversations.  Software will be checked on a random basis.

22      Defendant must also warn others of the existence of this

23  software program.

24      Defendant is prohibited from attempting to remove,

25  tamper, or alter/circumvent in any way the software program.

1    Defendant must comply with all the rules set forth in the

2    Computer Monitoring Participation Agreement.

3    He will submit and surrender any media devices to which

4    he has access to or control of to a search based on reasonable

5    suspicion or contraband or evidence of a violation of a

6    condition of supervision.

7    Defendant shall have no unsupervised contact with any

8    minor children.

9    The term "contact" extends to any form of communication,

10   such as mail, telephone, and other forms of electronic

11   communication.  It does not encompass persons under the age of

12   18, such as ticket venders, cashiers, waiters to whom a

13   defendant might deal.

14   The Court finds that the defendant does not have the

15   ability to pay a fine.  And it's ordered that the defendant

16   does pay the special assesment of $1,100, which shall be due

17   immediately.  No interest will accrue on that special

18   assesment.

19   If he is placed on -- if he has supervised release,

20   within 60 days of the commencement of supervised release, the

21   probation office shall recommend a payment schedule.

22   It is ordered that he will forfeit the following items to

23   the United States, those items that are listed in the Plea

24   Agreement:  the ZTE cellular telephone, the All-In-One HP

25   computer, the Apple iPhone, the SanDisk Cruzer Glide 32 GB

1    thumb drive, the Apple iPhone, two Apple iPhones, X-Box, Dell

2    Inspiron laptop, two Alcatel cell phones, and three Visa

3    Account Now debit cards in third-party names.

4        Obviously, Mr. Jones, the supervised release imposition,

5    if for some reason the Court's imposition -- I am not quite

6    sure how that's going to be possible.

7        Do you have any questions?

8            THE DEFENDANT:  No, Your Honor.

9            THE COURT:  Mr. Rion?

10           MR. RION:  None, Your Honor.  Thank you.

11       I guess we would request that the Court recommend that he

12   be placed in a facility in proximity to the Dayton, Ohio,

13   region.

14           THE COURT:  I'll make a recommendation that he be

15   placed as close to the Dayton, Ohio, area as possible.

16       I also really am going to request that he be placed in a

17   facility that provides him appropriate treatment, if that's

18   possible.

19           MR. RION:  He would like that, Your Honor.

20           THE COURT:  And that would be a priority over the

21   proximity to Dayton.  Maybe the BOP can address both concerns.

22           MR. RION:  Thank you, Judge.

23           THE COURT:  Mr. Patel, anything?

24           MR. PATEL:  May I have a moment, Your Honor?

25           THE COURT:  Sure.

1          MR. PATEL:  Your Honor, I believe there is a

2     mandatory $5,000 special assessment unless the Court makes a

3     finding of indigency.  I understand and assume Your Honor, by

4     virtue of its ruling on the fine, it's effectively found that

5     the defendant is indigent and therefore will not be applying

6     the $5,000 special assessment.

7          THE COURT:  The Court finds Mr. Jones indigent.  Has

8     he filled out a --

9        Well, based upon the application that he previously

10    filled out with regard to an appointment, the Court's going to

11    find him to be indigent.

12         MR. PATEL:  Thank you, Your Honor.

13         THE COURT:  And I'm assuming there is no waiver

14    here.  Or is there?

15         MR. PATEL:  There is no separate waiver provision in

16    the Plea Agreement.

17         THE COURT:  So other than the conditions of the plea

18    to begin with --

19         MR. PATEL:  Correct, Your Honor.

20         THE COURT:  -- there was no separate waiver at all?

21         MR. PATEL:  That's correct.

22         THE COURT:  All right.  Mr. Jones, everyone who has

23    a judgment placed upon them who feels the Court has done

24    something, wrong, improper, or illegal with regard to their

25    case has a right to appeal the Court's decision.  And

1    obviously, as part of your plea, you did reserve your right to

2    contest certain rulings that the Court has made along the way.

3    But in addition to that, if you believe the Court has done

4    something wrong, improper, or illegal in anything else with

5    regard to your case, you have the right to appeal.

6         That must be done within -- a notice of appeal must be

7    done within 14 days.  If you can't afford counsel to pursue an

8    appeal, counsel can be appointed for you to make sure that

9    your appeal is timely filed and aggressively pursued.

10        Do you understand your rights to appeal?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Do you have any questions about those?

13              THE DEFENDANT:  No.

14              THE COURT:  Mr. Rion, anything else?

15              MR. RION:  Would you like our office to file a

16   notice of appeal and counsel to be appointed?

17              THE COURT:  Yes, we would request that if

18   Mr. Jones -- and I am assuming he may -- wishes to appeal,

19   that that notice of appeal could be filed.  And then if

20   appointment is necessary, then that can be taken care of.

21              MR. RION:  Yes, Your Honor.

22              THE COURT:  Anything further, Mr. Patel?

23              MR. PATEL:  Yes, Your Honor.  There may be -- I'm

24   just alerting the Court and counsel that there may still be an

25   issue the government wishes to bring to the Court's attention,

1  and that has to do with breach of a Plea Agreement.  We're

2  still assessing.  I raise that now because it might be

3  pertinent to if there is -- obviously there is a right to

4  appeal, but what he may appeal may depend on what the

5  government advocates as a remedy for what it perceives as

6  there having been a breach of the Plea Agreement in this

7  instance, and what the Court -- if the Court would accept as

8  the government's proposed remedy.  All of which is I am

9  alerting to as coming down the pipeline potentially.  But

10  other than that, no.

11      What I am getting at, Your Honor, is the Plea Agreement

12  had a provision in it explicitly that said that the defendant

13  would not withdraw or even seek to withdraw his pleas of

14  guilty.  He obviously did that twice.  The question that we

15  are considering now is essentially what to do about it.

16          THE COURT:  The Court's aware of the fact that the

17  defendant did move to withdraw his plea.  The Court overruled

18  those motions, but the Court will keep a watch on the

19  pipeline.

20          MR. PATEL:  Thank you, Your Honor.

21          THE COURT:  That will be all.  Thank you.

22          THE COURTROOM DEPUTY:  All rise.  This court stands

23  in recess.

24      (Proceedings concluded at 12:23 p.m.)

25

1                              CERTIFICATE OF REPORTER

2

3          I, Mary A. Schweinhagen, Federal Official Realtime

4    Court Reporter, in and for the United States District Court

5    for the Southern District of Ohio, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code that the

7    foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is

10   in conformance with the regulations of the Judicial Conference

11   of the United States.

12

13   s/Mary A. Schweinhagen

14   _____ November 5, 2018

15   MARY A. SCHWEINHAGEN, RDR, CRR
      FEDERAL OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25